Case 5:20-cv-00029-MFU-JCH   Document 1   Filed 05/02/20   Page 1 of 12
Pageid#: 1

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
5/2/2020

JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **JARED TILSON** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No: 5:20-cv-00029 |
| ) | |
| **D. TAYLOR,** ) | |
| in his or her individual capacity, ) | |
| ) | |
| Defendant. ) | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR MONETARY DAMAGES

COMES NOW Plaintiff, Jared Tilson, and files this Complaint to vindicate his rights under the U.S. Constitution and Virginia state law arising from the conditions of his confinement at the Middle River Regional Jail (MRRJ).[1]

## INTRODUCTION

1.

Jared Tilson was to serve a two-month sentence for larceny after he failed to pay for a milkshake and ice cream bar at Sheetz gas station following surgery. Before he began his sentence, Mr. Tilson called medical staff at MRRJ and told them he was

---

[1] The statute of limitation in this case expires on May 3, 2020. Mr. Tilson could have filed a motion to amend the Complaint in his related case but did not want to take the chance that it would not be granted and, if it were granted, it would be granted after May 3, 2020. Mr. Tilson has shown that he is committed to paring down Defendants in the related matter, but upon further review of the documents produced in the related case, including policy and procedures, D. Taylor is essential to Mr. Tilson's suffering as described herein.

1 | P a g e

prescribed a high dosage of Xanax for years and would likely have a seizure if he stopped abruptly. Mr. Tilson repeated this to numerous officers and medical staff members during his six-day incarceration, which was recorded in his medical record, but none of these MRRJ staff members took him seriously, or worse, they didn't care. Mr. Tilson began experiencing the symptoms of "acute benzodiazepine withdrawal" less than 24 hours after his incarceration, and this was also recorded in his medical record. After five days, Mr. Tilson was observed speaking incoherently in such an extreme degree that guards moved him to segregation, but these guards didn't alert medical staff. Twelve hours later, Mr. Tilson was found on the floor of his segregation cell, alone, having a severe grand mal seizure and inhaling his own gastric secretions. Most grand mal seizures last one to two minutes; *Tilson's doctors say his seizure could have easily lasted for over an hour.*

2.

Once MRRJ officers finally got Mr. Tilson to the hospital, his condition was so bad that he had to be sent by "helivac" to a larger hospital so that emergency room doctors could induce a coma and save his life. Mr. Tilson lived, barely, but he was made to endure the most painful experience of his life—all because of the incomprehensible incompetence of the medical and correctional staff at the Middle River Regional Jail.

3.

Mr. Tilson brings this lawsuit to be compensated for his harrowing experience and extreme pain and suffering and seeks punitive damages to deter this kind of reprehensible conduct at MRRJ once and for all. To save time and resources, Mr. Tilson has already obtained expert reports from medical professionals who practice exclusively in correctional settings.

## JURISDICTION AND VENUE

4.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4), under 42 U.S.C. § 1983. Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3 (b)(2) because (1) a substantial part of the events and omissions giving rise to Mr. Tilson's claims occurred within this District and Division and (2) Defendant transacts business in this District and Division.

## ADMINISTRATIVE EXHAUSTION

5.

Mr. Tilson is released at the time of the filing of this suit and is not required to exhaust administrative remedies.

# PARTIES

**A. Jared Tilson, Plaintiff**

6.

At all relevant times, Plaintiff **Jared Tilson** was an inmate at MRRJ. Mr. Tilson is a citizen of Virginia and is not currently incarcerated.

**B. D. Taylor, Defendant**

7.

Defendant **D. Taylor** was at all relevant times employed by Middle River Regional Jail Authority ("MRRJA") as a correctional officer. At all times relevant to this Complaint, D. Taylor was acting under the color of state and federal laws, and was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of MRRJA. At all times relevant, D. Taylor was the documented segregation officer during the day shift on May 2, 2018 and was the segregation officer responsible for documenting Mr. Tilson's move into segregation on May 2, 2018 and the reason for Mr. Tilson being moved into segregation, which was "Segregation Mental Health." D. Taylor also had a non-discretionary duty to brief Segregation Officer Smals about both Mr. Tilson being moved and the reason Mr. Tilson was moved into segregation—when Officer Smals supplanted D. Taylor as a segregation officer on May 2, 2018 after a shift change.

# RELEVANT FACTS

## A. MRRJ's relevant policies regarding D. Taylor as a segregation officer

8.

MRRJ Standard Operating Procedures on facility logs and reports stated the following under the title Segregation Detention log:

> 1. The Segregation/Detention Log **shall** contain, at a minimum, the following information:
> a. All **entries** and exits of inmates, **to include reason for placement**.
> b. **Any unusual occurrences or behavior**.
> c. All security checks by officers.
> d. All daily and weekly routines as they are completed (ex. Showers, meals, etc).
> e. All information in 1 and 2 **shall** be **reported to the proceeding shift at shift change.**
>
> 2. The Segregation/Detention Log shall be a Log Book that is maintained by all officers working Segregation.

9.

MRRJ Post Order 10.7 Segregation Officer states the following under the title General Duties:

> "2. RELIEF BRIEFING - **Meet with the officer from off-going and/or on-coming shift and discuss issues which may affect the post operation**. Inspect post to ensure it is clean and in good condition"; and
>
> "7. LOGS - Maintain accurate, detailed records and logs to include who, what, when, where, why and how. Submit appropriate reports as needed or directed. Ensure the Segregation/Isolation Activity Log is completed daily on each inmate. When an inmate is **transferred in** or out of a specific bed assignment, record the movement **in the control log**, on the **bed board white board**, with the **Records Office**, with the **Watch Commander** and with **Master Control**. Log all visitors in the Post Log.

Ensure that each shift **documents inmates who are placed in** or released from SMU as well as notify Classification. Security personnel responding to emergency situations or providing escorts need to be entered in the Log book."

10.

On May 2, 2018, at the end of their shift, D. Taylor had a non-discretionary duty to brief Officer Smals about Mr. Tilson's placement in segregation and the reason for his placement in segregation because Officer Smals was replacing D. Taylor as the segregation officer.

11.

On May 2, 2018 through May 3, 2018, MRRJ had a policy that if a prisoner such as Mr. Tilson was moved into segregation for mental health reasons, the segregation officers such as D. Taylor and Officer Smals had a non-discretionary duty to personally observe Mr. Tilson every 15 minutes: "15 Minute checks- Ensure these checks are done on all **Mental Health Inmates**. Complete the proper log for these checks." See MRRJ Post Order 10.7 Segregation Officer.

12.

Mr. Tilson was moved to MRRJ segregation unit on May 2, 2018, while D. Taylor was the segregation officer, and the reason for moving Mr. Tilson to segregation was "Segregation **Mental Health**"—mindful, and again, that D. Taylor and Officer Smals, as segregation officers, had a non-discretionary duty to personally observe Mr. Tilson every 15 minutes: "15 Minute checks- Ensure these checks are

done on all **Mental Health Inmates**. Complete the proper log for these checks." See MRRJ Post Order 10.7 Segregation Officer. And in any event, MRRJ policy definitely mandated both Smals and Taylor to personally observe Mr. Tilson more than twice an hour because he was segregated from general population for mental health reasons, as evidenced by documented facts such as Mr. Tilson "saying some off the wall stuff;" "making strange remarks that didn't make any sense," and having hallucinations.

13.

Upon information and belief, D. Taylor did not brief Officer Smals at shift change about Mr. Tilson being moved to segregation and the reason he was moved to segregation, as evidenced by Smals failing to personally observe Mr. Tilson every 15 minutes, and in any event failing to personally observe Mr. Tilson more frequently than twice an hour. If D. Taylor did properly brief Smals and otherwise convey the required information about Mr. Tilson to Smals, then obviously Smals has a lot of explaining to do because he absolutely violated his non-discretionary duty to personally observe Mr. Tilson according to policy mandates. The Court will be shocked at the video in this case, in which Mr. Tilson's legs and arms are as stiff as a stick and Mr. Tilson is in obvious severe distress for over an hour, moving erratically on the ground. There is no way—and Plaintiff means no way, that anyone personally observing Mr. Tilson would not have known to get medical immediately, well before 5:13 am on May 3, 2018.

14.

Furthermore, according to Plaintiff's jail expert, the industry standard places a non-discretionary duty on D. Taylor, as the segregation officer, to brief Officer Smals, the replacing segregation officer, about Mr. Tilson's placement in segregation and the reason for that placement because, amongst other reason, Smals would have to adjust his check from, for example, twice an hour to every 15 minutes (and in any event more than twice an hours) in situations such as Mr. Tilson's or other prisoners are placed in segregation, for mental health reasons. The reason Mr. Tilson was placed in segregation would also dictate the frequency in which a segregation officer such as Smals communicated with other staff (medical or otherwise) about Mr. Tilson or another segregated prisoner. This no-discretionary duty however, and according to Plaintiff's expert, does not take away or diminish in any way Officer Smals's non-discretionary duty to ensure that he knew who was moved into segregation and the reason for that move, and thus adjust his personally observations of those prisoners accordingly.

## COUNT I
## DELIBERATE INDIFFERENCE
## DEPRIVATION OF EIGHTH AMENDMENT RIGHT
## TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT
## BY RECEIVING ACCESS TO ADEQUATE MEDICAL CARE
## PURSUANT TO 42 U.S.C § 1983

*(against D. Taylor, in his or her individual capacity)*

15.

Plaintiff hereby incorporates paragraphs 1 through 14, and any paragraph this Court deems relevant, as though full stated in this section to support this Count.

16.

Based on the facts incorporated to support this count, D. Taylor showed deliberate indifference to the physical and psychological well-being of Mr. Tilson by understanding the mental-health reason why Mr. Tilson was placed into segregation during D. Taylor's segregation shift but nevertheless failed to brief Smals about Tilson's movement into segregation and the mental-health reason for that movement. Based on the governing policies and procedures, Mr. Tilson movement into segregation during D. Taylor's shift provided a factual basis to draw an inference that D. Taylor knew there was serious institutional concern about Tilson, a concern that was grave enough to segregate him from general population. Upon information and belief, D. Taylor understood that governing policies mandated more frequent personal observation of prisoners, such as Mr. Tilson, placed in segregation for mental health reasons because those prisoners, such as Mr. Tilson, pose a serious risk of harm to themselves and others, especially to themselves. Thus, D. Taylor knew that

failure to brief Smals about Mr. Tilson's mental health placement into segregation could cause Smals to fail on his obligation to properly monitor Tilson, and in fact Smals did failed to personally observe Tilson according to policy, and as a result, Mr. Tilson nearly died.

## COUNT II
## ORDINARY AND WILLFUL AND WANTON NEGLIGENCE
*(against D. Taylor, in his or her individual capacity)*

17.

Plaintiff hereby incorporates paragraphs 1 through 16, and any paragraph this Court deems relevant, as though full stated in this section to support this Count.

18.

Negligence is about standards and correlated duties. Based on the incorporated facts to support this Count, including the facts discussed in Count I, D. Taylor owed a non-discretionary duty to Tilson to brief Smals with respect to both Mr. Tilson's placement in segregation and the mental health reason for Mr. Tilson's placement in segregation. Upon information and belief, D. Taylor violated that non-discretionary duty, as evidence by Smals complete failure to personally observe Mr. Tilson, who was suffering mental health issues, every 15 minutes, and in any even more frequently than twice an hour. As a result of D. Taylor's failure, Mr. Tilson suffered immense pain and suffering, because upon information and belief, and pleading in the alternative, Smals was not properly briefed about Mr. Tilson, leading Smals to violate non-discretionary mandates regarding the personal observation of Mr. Tilson. D. Taylor

was willfully reckless in the light of having strict mandates that prohibited his alleged standard violations. Thus, is owed all permissible damages allowed under governing law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Mr. Tilson, prays for a trial by jury and judgment against Defendant as follows:

(a) That process issue and service be had on Defendant;

(b) That Plaintiff recovers all costs of this litigation;

(c) That Plaintiff receives compensatory damages;

(d) Award Plaintiff costs, including reasonable attorneys' fees under 42 U.S.C § 1988(b);

(e) That Plaintiff receives Punitive Damages under all applicable laws because Defendant acted with conscious, willful, and wanton indifference to the laws that protect Mr. Tilson and with knowledge that harm would probably result from their acts and omissions;

(f) That Plaintiff receives Special Damages in an amount of at least $150,000 to include his medical bills.

(g) That Plaintiff receives such other and further relief as this Court deems just and proper.

Respectfully submitted on this 2nd day of May 2020,

/s/ MARIO B. WILLIAMS

              Mario B. Williams (VSB #91955)

**NDH LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0442 / 404-935-9391 FAX
mwilliams@ndh-law.com
*Counsel for Plaintiff*